Number 18-3440, Dustin Reinhardt, et al. versus Crown Equipment. Very well, Mr. Warschauer, we'll hear from you first. May it please the court, my name is Michael Warschauer and I represent BIP Health's plaintiffs below. Do the rules of evidence apply to all evidence or is there a separate, less stringent set applicable evidence offered by the defendant? Gentlemen, collectively you have written thousands of opinions and every one of those opinions you've stated explicitly or by implication that the rules were the same for both sides. Nevertheless, Crown argues that the McKnight Substantial Similarity Analysis for application of Rule 403 relating to the admission of videoed accident reconstruction experiments does not apply to the ATV Matamoe evidence that was the heart of its case. In McKnight v. Johnson controls, this court held, a court may properly admit experimental evidence if the tests were conditions substantially similar to the actual conditions. This rule provides clear guidance to trial courts and protects juries from confusing and unfairly prejudicial video recreation evidence. It was the district court's duty to use this test and it was Crown's burden to pass it. The McKnight Substantial Similarity Test, similarity rule, required the district court to properly exercise its discretion. To do so, it had to use a two-step process in deciding whether to admit this ATV evidence. Let me ask you this. Does substantial similarity apply when really what you're talking about is an alternative design? Absolutely. Why? Shouldn't they be able to test the alternative design in situations that are entirely different to determine whether that alternative design is feasible? Your Honor, that's entirely true. If that testing process replicates an event, in this case, an off-doc event and a tip-over event, before it can be shown to the jury, it still must comply with the McKnight Substantial Similarity Test. That test required the district court, before allowing a recreation that was the heart of the case to be shown by the jury, the court had to first classify the evidence. Was this really presented as a recreation or was it presented as a testing of the alternative design of adding a door? Well, I don't think there's any real difference, but it was indeed presented as a recreation. Why do we know this? We know this because it was set up to look like a recreation. They had a dummy ... Recreation of what? Recreation of what? A tip-over event. They went to the trouble of putting overalls on the ATD to make it look human. They propped it up in the forklift to put it in a human stance. They used forklifts, while not substantially similar, were similar enough to the layman to look like the forklift that the plaintiff would have been using. They then put that off-courting, doc, to recreate that event. Yes, sir? Do you think recreation is the right word? Recreation implies something already happened and you're trying to recreate it. Isn't this more of a hypothetical what would happen if we had a different design and a person in the forklift and a certain event happened in the future? I don't understand there to be evidence that this actually happened before and you're recreating it. Oh, it's happened many times. Never with a door, but their point is forklifts go off-loading docks. They were trying to recreate what that would look like to the jury. The words they used to the jury were, to the court, and their arguments were, we need to show the jury what this looks like. That implies we need to recreate it for the jury to take them there so that they will understand our position on how this happened. When McKnight talks about experimental evidence, it talks about all experimental evidence. Sure, in that case they were talking about a battery, but there was no limitation. If the rules only apply to the event that is the plaintiff's causative event, it would be the wild, wild west for all other evidence. Back to whether it's an abuse of discretion, you first have to decide why this event is being offered. Is it a recreation of an event that the defendant wants the jury to appreciate as it occurs to recreate it to say, this is what will happen with a door, or was it? Counselor, are you really getting to the language in McKnight where the court said the closer that the experiment gets to simulating the accident, the more important it is that the conditions have to be similar? Absolutely, your honor. Absolutely. It's not a black or white, it's almost more of a sliding scale. It's absolutely a sliding scale. When they start to dress the dummy in a set of overalls, when they tape its hands down, when they use the forklifts and push it over, it's so close to reality that you have to then look even closer. The second part of this evidence that the district court didn't do its job is, it didn't then apply the McKnight substantial similarity test to this evidence and measure it. How does it compare to the event being recreated? Is it substantially similar? Is it indeed a scientific principle? If it is a scientific principle, what scientific principle was applied? It was an abuse of discretion here because the district court had an erroneous view of the law. This was demonstrated by its complete failure to apply the McKnight test. It instead only applied a 401, 402 relevance test. It never got into the heart of 403, which had it done so, would have used the substantial similarity test articulated in McKnight and previously articulated in Shampo. It didn't use that measuring test, never one time. The second proof that this was an abuse of discretion is, it made a clearly erroneous assessment of the evidence by failing to recognize the videos for what they were, recreations that were not substantially similar. In this case, there are indeed two events at issue. One is the collision that injured the plaintiff and the other is the off dock and tip over events that are the basis of Crown's defense. Those can only be the basis of Crown's defense if they relate to what happens to a human, not what happens to an ATD, what happens to a human operator when a forklift with a door tips over or goes off loading dock. The defendant relied on this recreation evidence to prove that doors increase the danger to human beings in tip over and off dock events. We know this because when we look at the videos, whether they were the Crown videos that went out with the jury or other videos they saw, the dummies were made to look lifelike, even to the point of zooming in on them as they laid in a crumpled position on the floor. They did everything they could to humanize this. They played the sounds so that the jury would hear how violent it is. The dummies, your honors, were adjusted to 1G. What that means is if I was perfectly adjusted to 1G and I put a hat on my head, I would collapse, hardly substantially similar. The forklifts weren't substantially similar. Counselor, am I missing something because it seems to me that the substantial similarity is meant to apply to a recreation of the underlying claim or the underlying incident, I should say, that that needs to be substantially similar. Not necessarily the feasibility of an alternative design. Your honor, that normally is the rule, but if you are recreating an event as part of your defense, the substantial similarity test would have to apply to all events. I'm sorry, what I'm lost on in your terminology is what are they recreating? They're not recreating the underlying incident that your client was involved in, right? That's absolutely true. Okay, so what are they recreating? It seems to me what they're doing is testing the feasibility of adding a door. They are recreating an accident involving an off-dock or tip-over event. That is the event they are creating for the jury's review. I think you're better off saying they're creating it, not that they're recreating it. They're creating a hypothetical scenario that they say would happen if we had a door. Your position is the hypothetical creation isn't substantially similar to what would really happen, and therefore, it's misleading to the jury. Judge Collins, I think that my use of two letters, R and E, are probably misplaced. I think you've hit the nail on the head. If you create an experiment that you show to the jury, and that experiment looks like a creation of an event that is relevant to the case, is relevant to your defense, here the heart of your defense, you must make sure that that complies with the McKnight Substantial Similarity Rule. If it does not, we have real 403 problems because it is likely that it will mislead and confuse the jury as we believe it did here. So now that we've established that, you're asking us then to extend McKnight beyond recreations of the incident that happened to the plaintiff to these hypothetical scenarios that are part of the defense. The question would be, why should we extend McKnight to that, and why isn't cross-examination and the other things the district court mentioned sufficient to guard against misleading the jury? Weren't you able, for example, to cross-examine here and establish that a real person wouldn't act the same way that a dummy works, and that there are different bars on different types of forklifts and so forth? There are two answers to that. First, I don't believe McKnight could ever be read as limited only to one line of evidence produced by one side. The second is, we learned from the United States Supreme Court in Daubert that cross-examination of science that could be misleading, that is junk science, is not an adequate protection for the jury. The judges still have to exercise their gatekeeping role. In this case, the judge never exercised his gatekeeping role because he never went through the work. If they're going to offer it for a scientific principle, they never identify the scientific principles. If they're going to offer it for the creation of an event for the jury to consider, they have to show this is how it would actually happen. I can't unring the bell of video analysis. We know this from numerous cases throughout the country, plus commentators who write about it. Video testimonies, video experiments shown by well-qualified experts are so powerful they cannot be fixed. As our trial judge said, if I improperly admitted the ATD Matamor evidence, I agree that the admission of this evidence was prejudicial and entitles the Reinerts to a new trial. Before you reserve for rebuttal, I hope you'll spend at least a minute on Oler and Canney and the cases that say if you preemptively introduce evidence that the defense is likely to introduce, you forego your opportunity for appeal. The Supreme Court in Oler rejected the argument that that's not fair and said that everybody's got to make trial decisions based on the pros and cons. Why isn't this a case where you had to make a strategic decision about whether to go forward with your expert talking about these videos before the defense put them on and you're kind of stuck with that decision? There was no mystery about what the defendant was going to use in this, how they were going to use this. The court had already ruled this evidence in. When they overruled our motion limiting 7 and 24, 103B said I never had to make another objection. Yeah, but that's different. No objection was required to preserve it under Rule 103, but the question is whether affirmatively pursuing it is a waiver. They opened it, they showed it to the jury in their mini-opening, and they did an explicit and direct description of it in their primary opening. It was before the jury. Furthermore, we believe that the method and manner in which this trial judge managed his evidence when he ruled against our motions in limine, it was fair game. That is why defense counsel had no problem showing it in the opening because they knew it was already admitted. The defendant's opening couldn't be any more clear on what they were going to do. This isn't a question where there was some guilty plea to another crime, and we don't know whether the state's going to use it or not, and the defendant preemptively gets out in front of it. Here, there was no question they would use it. They had already used it. I really don't think Oler turned on any mystery about whether the government would cross-examine the defendant with his prior felony convictions. It's a no-brainer that they would do that, and the defendant decided to preempt that by putting it on himself, and they said, you've waived your objection. This evidence was before the jury before we ever talked about it. There was no question about it, and the district court had ruled that. I reserve my 36 seconds. Wait, wait, wait. The evidence wouldn't be before the district court. We discussed this, Judge Grinder, we discussed this in some detail in our brief about the effect of a trial court's ruling. When a trial court makes a ruling, it has to be respected throughout the case. We have never shown in the opening it is before the jury. To say otherwise is not consistent with the realities of trials. Now, there is a difference between opening statement and the presentation of actual evidence, but don't the advisory committee notes to 103 cut against you as well? I don't think so. I think in a situation whereas here there is an explicit ruling against us, whereas here that ruling led us, everyone believed this evidence was admitted, and where it was indeed used and described explicitly by the defendant in their openings, it was our obligation to respect those rulings by the trial court and proceed accordingly. Well, an opening statement is not evidence is part of the problem. You can respect the ruling without offering the evidence. You have to respect the fact that the defense could offer it. One thing I wondered about, though, is you said the district court had a... You said that there was some procedure in the district court that all the exhibits were automatically evidence. Can you explain that briefly? Yes, sir. If the parties agreed to them, they were automatically in. If he had ruled on them, we believed them to automatically be in also. In this case, he had ruled on them. We did not... What if nobody had decided to use the evidence during the trial? What would happen to that exhibit? I don't know. It was our belief that it all went out with the jury. So you mean that the parties had to present... At the end of the case, it went out. Pardon me. Judge Carlton, at the end of the case, if no one had referred to something, it was pulled out. That is my understanding, and that's what I believe. All right. If that's the case, then I think you're still in a situation where it's not really in the record until one of the parties makes use of it. It sounds like you're the first one to make use of it. We never asked for it to go out with the jury. All right. We went from soup to nuts, exclusively, and as we pointed out to the district court, as voraciously as we possibly could to keep that evidence out. Thank you. All right. We'll give you a little time for rebuttal. It's an important case, and we had some extra questions for you. So thank you for your argument. Thanks, Judge. Mr. Collin, we'll hear from you. Thank you, Your Honor, and may it please the court. Before I address some of the points Mr. Warshower made, I do want to start with a statement that runs throughout his briefing and that he just made regarding Judge Bennett's analysis of this evidentiary issue. I've tried many cases. I've rarely been involved in a case where a judge was so involved in making evidentiary decisions. It was argued he did not do his job, he didn't use the correct standard. I would refer the court to Appendix 562, Plaintiff's Master Motion and Limiting, where they directed the court to analyze this ATD evidence under a relevant standard, under 402 and 403. That's exactly what Judge Bennett did. Judge Bennett held hearings. We further addressed this at the pretrial. He issued an over 30-page order on these motions. To suggest that he did not evaluate, did not do his job, I believe does not reflect the painstaking nature of Judge Bennett's analysis. I then want to follow up with something one of your honors said. Judge Collin, I'm sorry, I didn't mean to interrupt you. I didn't hear if you were trying to interrupt me there or not. Go ahead. Okay. This evidence that was used was absolutely a part of our defense effort to establish that the alternative design proposed by the plaintiff, which is their burden to propose under Iowa law, would in fact, according to the instruction, introduce dangers of equal or greater magnitude. We developed evidence and we have evaluated alternative designs to show that and to provide evidence in that regard. This was not done in an attempt to recreate Mr. Reinhardt's accident. No judge in the country would have evaluated this evidence under a standard of, did Crown offer this in an attempt to recreate the accident, which is what McKnight and every case plaintiff cites stands for. There is a substantial similarity requirement in those situations. It was not- The question is, why shouldn't McKnight also apply to evidence that's offered for the purpose of showing hypothetically what would happen with a different design? If you're trying to convince the jury, if we put a door on it, it's going to cause problems and injuries. Why shouldn't your video have to be substantially similar to what would really happen? McKnight addressed that precise issue. They drew from cases in the First Circuit as well as other law. They held that scientific principles, when demonstrated in a fairly abstract way, are quite unlikely to be confused with the events on trial. The more troublesome cases, however, are ones like this one where they're trying to recreate the accident. When you have a situation where they're demonstrating science, they're testing an alternative design, you have to evaluate that evidence, as Judge Bennett did, under a relevant standard. These same arguments were made that these forklifts were different than the ones involved in Mr. Reinhardt's accident. First of all, that's not correct. They were the same forklifts. These were stand-up rider forklifts, RC-type forklifts. Judge Bennett went through each of these arguments and felt that this testing met a Daubert analysis. They moved to exclude it under Daubert grounds, and they moved to exclude it under relevance grounds. He held it was relevant, and it was reliable science, and the methodology was sound, and that was backed up by many witnesses at trial. Counsel, earlier I referred to some language from McKnight. It's actually from page 1402, where the court said, the closer the experiment gets to simulating the accident, the more similar the condition of the experiment must be to the accident conditions. What are you suggesting is the meaning of that language then? It's clear, and what they said was, if you're attempting, say you're attempting to introduce a scientific principle, that really is an attempt to argue that this is what happened in Mr. Reinhardt's accident. We would be attempting to recreate a left leg injury, a collision accident, but just showing general scientific principles. What the court held was, the closer you get to attempting to recreate the accident plaintiff is complaining of, you must show substantial similarity with his precise accident, because the jury is much more likely to confuse the issue if you're trying to show that. If you were using a dummy leg, or if you were using something that was trying to corroborate Mr. Reinhardt's accident. We didn't do that here. This was not an attempt in any way, shape, or form to recreate his accident. This was to test an alternative design and demonstrate a scientific principle. I've got a follow-up question if I could. We're under an abusive discretion standard here, and so I need to know how the district court exercised its discretion. In your brief on page 45, you assert that the district court, quote, determined that the challenged evidence demonstrated scientific principles, end quote, and you cite to page 31 of the pretrial order. I've looked at that page, and I can't find any such determination by the district court. What we're referring to there is when he said it was relevant evidence that was relevant in assessing the alternative design proposed by Mr. Reinhardt. That's a scientific assessment. Whether the alternative design proposed by Mr. Reinhardt and his counsel was reasonable did not create additional dangers. That was the concept of our argument, and that was what Judge Bennett ruled was when he looked at this evidence, he looked at the methodology, he heard from witnesses who said this methodology was acceptable, the use of ATVs to demonstrate injury potential to operators. He heard myriad pieces of testimony that this was a reasonably reliable scientific principle. I guess what I'm asking is in order for us to apply the abuse of discretion standard, the district court must first have made a determination that this was a scientific principle rather than a recreation, and I don't see a clear place in the record where that decision was ever made. Your Honor, I would say I don't see that precise language either. I'm not going to try to sidestep that issue, but I will tell you, I don't think any rational jurist or individual could even contemplate that we were using that evidence as a recreation of Mr. Reinhardt's accident, and that is in fact the standard. If you read the clear language of McKnight, they say that it does not apply in a situation where you're not attempting to recreate the plane of accident. I don't think there's even a rational argument that Crown was introducing evidence of tip-overs and off-the-docks to recreate Mr. Reinhardt's collision accident. What we were ... So what if it's a partial recreation? Does McKnight apply? It can, Your Honor. I think if you're trying to partially recreate part of the plane's accident, then I think McKnight would apply, at least to that portion, but that was not in any way done here, and that was not the purpose of the evidence, and Judge Bennett was clear on that. He knew that. I want to take one minute, and then I'm going to come back to McKnight, but I also want to address, because I want to do it in order, the waiver issue, and I believe Your Honors are very correct in that assessment. We will absolutely support this evidence that we have done that, but what plaintiffs did here is exactly what Oler and the Dr. Pepper B. Caney case and the Huff case say in the Eighth Circuit, you cannot do, and Mr. Warshower's only argument is Rule 103 allows me to do that, and while we know this was a definitive ruling, the rules comments to Rule 103, and I believe Judge Grunder was referring to that, state explicitly, and this is the comments to Rule 103B that Mr. Warshower just relied upon. They say the amendment does not purport to answer whether a party who objects to evidence that the court finds admissible in a definitive ruling and who then offers the evidence to effect, thereby waives the right to appeal the trial court's ruling, and they cite to the same types of cases which have been held very clearly in the Eighth Circuit. Mr. Warshower understood, we all as trial lawyers understand, when you introduce the evidence into the trial. The only thing I had done is shown a picture in a mini opening, which is not the video he complains of, by the way, and then I discussed it during my opening, which you're entitled to do, and as your honors know, that's not evidence in the record. Mr. Warshower showed the videos, not only that we were proposing showing, but then he showed one of a Raymond, a different manufacturer's forklift, to his witnesses in his affirmative case in chief, and he did it to gain trial advantage, because he felt that if he showed the weaknesses of the testing, then he could argue this was crowned just attempting to So he did it purposefully and in a calculated fashion, and Huff and the K&E v. Dr. Pepper case are clear that when an individual does that, and I will read you the quote, they absolutely waived their argument that this was- Question for you on the district court's practice about admission of exhibits. We had a little back and forth with Mr. Warshower, and where would we find the explanation of that rule, of that practice, and the fact in particular about whether the exhibits go to the jury if no one refers to them? Your honor, I can tell you, and we argued this in our brief, I don't know where you'll find that rule, because I don't think that's how the rule was applied. It was clear to us that unless an exhibit was admitted during trial, it was not going back to the jury. I thought Mr. Warshower agreed with that. I'm just asking you where we can, is there something written down from the district court that explains how this is handled, or is this just something that was picked up in discussions or off the rack? I assumed that because I think that's how every trial applies. Just because there's discussions about potential exhibits, and even if objections are not raised, unless it is introduced to the jury or brought to the jury's attention, I can't imagine a court allowing it to go back to the jury room. I wouldn't think so, but I thought there was some mention in the briefs that the court had a practice that all the exhibits were automatically admitted into evidence without any further action by counsel. I think what the practice was, as I understood it, if the parties agreed, there would be no need to argue that in front of the court again. You could use it without asking for it to be admitted, but you had to use it to then have it go forward and go back to the jury. They weren't getting information that was not presented to them. Your view is that if the plaintiff had not referred to these videos, and you for some reason had decided not to use them, then they would not be in the record? That's absolutely correct. They would not have been introduced if we had not used them. I'll be honest with the court. It was our goal to use them, but if we had not for whatever reason, and in fact, Mr. Warshower used different portions of the videos than we did. He wanted to use portions that he affirmatively chose as a trial tactic that could advance his case. What the court in Huff, the Eighth Circuit said there is, such a strategy as admitted by plaintiffs, as Mr. Warshower has admitted here, waives any objection that plaintiffs may have had and does not preserve the issue on appeal. That counsel was in the same position Mr. Warshower was, and Mr. Warshower could have dealt with it on direct of his witnesses and just ask them general questions about the science, but when he puts the piece of evidence before the jury, the Eighth Circuit and the law is very clear if you look at the Dr. Pepper case and the Huff case, that he has waived that argument. We believe that is convincing law in the Eighth Circuit. Does it make any difference that you presented the pictures during opening statement? First of all, he's challenging the videos. If I would have shown the videos, I think it would be a better argument, but even that, we also- The pictures came from the videos, did they not? They did. Yes. Well, actually, no. The pictures were taken at the same time. I'm not trying to be cute there, but it wasn't like they were stills of the video. There were pictures taken at the time of the testing as well. So, we had an opportunity in a mini opening just to show the jury what the case was about and we could use three pieces of information to further describe it. We didn't show any video. We briefly put up pictures to show you're going to hear about testing that we've conducted to test their alternatives on, to see if it's scientific in character and see if it has metal, but we did not show the video and in fact, again, I think what's relevant here to your court's analysis of the waiver issue is Mr. Warshower used those videos affirmatively to support his case. He said, I'm showing you portions of the video which I think show you that this science actually helps my position and that individuals, this does not replicate what would happen to an operator. So, he affirmatively used it. He didn't just say, here's what they will show you and I want to show it to you first. Turning to the substantial similarity issue, your honor, we've looked at this and I've asked my young people to look at it. There is not a case in the country that we found that applies the substantial similarity test to scientific evidence which is used to show testing of an alternative design or to demonstrate a scientific principle. That is such a clear body of law. Every circuit has a McKnight and they're all very clear that when you're attempting to recreate the plaintiff's accident, because of the danger that the jury will begin to see that video as an attempt to influence their feelings about that accident, when you are clearly looking at scientific evidence, Daubert and other relevance concerns apply. I will ask your honors to look at what Judge Bennett did. He could not have been more discretionary. He could not have done more to painstakingly analyze these issues and in fact, believe me, there were many pieces of evidence we did not get in. This gentleman exercised his discretion. We believe he was right, but more than that, we believe plaintiffs have waived their right to even assert these issues before your honors. Thank you very much for your time. You have anything to say about whether any error would be harmless or prejudicial? I certainly read Judge Bennett's statement in his motion for a new trial and I do think he supports that he made the correct decision. I will tell you there was overwhelming evidence and I would urge your honors to read the Hernandez v. Crown per curiam order of the 11th circuit, which lays out the enormity of the evidence supporting this decision not to enclose these compartments. We had OSHA standards, ANSI standards. We had letters from OSHA and NIOSH which supported our decision to make an open operator compartment. We showed real world accident data. We had so much compelling evidence that adding this metal to the back of this compartment would in fact cause more harm. While I think the videos were certainly pieces of evidence, I think there was overwhelming  In fact, the national standard on this issue says these trucks shall be designed with an open operator compartment, not with a door. That alone a lot of people can say, this truck not only meets the standard, but if you put a door on it, it does not meet that standard. Though I would contest that even if you were to say these videos for some reason would be inadmissible, which we certainly disagree with, that there's overwhelming evidence supporting this jury's verdict. Therefore, you should not substantially influence the verdict, you mean? Is that your bottom line? I don't think there's anything that it did. In other words, it's his burden to put that and when you have that much evidence on the other side, the ANSI standards, the OSHA pronouncements, the Matymo testing, the consultant's reports that we put into evidence, I think we've overwhelmingly about the burden to show there is other evidence to support this verdict. I don't know if it's his burden, if there's error, it might be your burden to show it did not substantially influence the verdict, but you've laid out the evidence you think would support that. Thank you for your argument. Mr. Baker, if I could give you three minutes for rebuttal, would that be agreeable? That would be wonderful, your honor. Thank you very much. I want to start off with this idea of whether it was harmful error. We not only have the district court telling us it's harmful error, we have it used in the all phases of the trial and this court's jurisprudence tells us that that typically means it's harmful error, and we also have in their response to their motion in limited appendix 426 where they say if this evidence doesn't get in, they can't prove how dangerous off-doc events are. I want to go back to the recreation one second. They were creating an event, but it was the recreation of events that happened. That is forklifts go off with docks. That is a real event. They merely took that event, recreated it in a way that was not substantially similar, and added a door. That's what made it dangerous and misleading. I would also like to point out that we did not file Dalvik motions against their experts. We simply said these videos were so highly prejudicial, did not meet the substantial similarity test, that they should have been excluded. I kept hearing throughout counsel's argument about scientific principle. Through this motion, through this minute, I have yet to hear what that scientific principle is. Scientific principles are, for example, in the Shampo case, which involved the principle illustrated there was how long it takes a tractor-trailer to coast down to a stop from 35 miles an hour. That wasn't a recreation. That was a demonstration of physics. Here, they took an event and created it to mislead the jury or to lead the jury to believe that doors were dangerous. The rules set forth in McKnight need to apply to that evidence as they do to all other evidence. I would close this way with respect to the waiver. First, we do have cases like Anheuser-Busch versus John Labatt, a 1996 decision of this It makes evidence relevant to those claims fair game. One party's claims and opening statement open the door for the other party to introduce evidence otherwise inadmissible. I would also argue that to the extent that we might see that what I did is a mistake, this court has written in U.S. versus Brumfield, opening a door which might have been a tactical mistake is not a rule for injection of prejudicial evidence. And lastly, assuming this court takes the position that despite our belief, despite the ruling, despite our unequivocal effort to keep this evidence out that we waived it, it would nevertheless qualify as plain error. It was an error. It was plain in that the judge clearly did not use the guidance in McKnight and it absolutely affected our substantial right to a trial that was untainted by evidence of a highly prejudicial nature likely to convince the jury. Thank you for your time today, gentlemen. I appreciate it. Very well. Thank you for your argument. Thank you to both counsel for your presentations. The case is submitted and the court will file an opinion in due course.